**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**THE ESTATE OF ROOSEVELT**                                 **PLAINTIFFS**
**HOLLIMAN; and MICHELLE
LUMZY, individually and in her
capacity as the Administratrix of
the Estate of Roosevelt Holliman**

**V.**                                                             **NO. 4:22-CV-75-DMB-JMV**

**MARSHAL TURNER, et al.**                                       **DEFENDANTS**

**OPINION AND ORDER**

Roosevelt Holliman was stabbed to death in his cell by fellow inmates at the Mississippi State Penitentiary in Parchman, Mississippi. Holliman's estate and the administratrix of his estate sued multiple Mississippi Department of Corrections employees under 42 U.S.C. § 1983 alleging violations of Holliman's Eighth and Fourteenth Amendment rights as well as wrongful death under Mississippi law. Certain defendants have moved to dismiss the claims on arguments that sovereign immunity and qualified immunity bar the federal claims and the Mississippi Tort Claims Act bars claims of inmates. Because sovereign immunity does not apply but these defendants are entitled to qualified immunity, and because the plaintiffs failed to allege facts to show the wrongful death claim is outside the Mississippi Tort Claims Act, dismissal will be granted.

**I
Procedural History**

On May 20, 2022, the Estate of Roosevelt Holliman and Michelle Lumzy, individually and in her capacity as the Administratrix of the Estate of Roosevelt Holliman, filed a complaint in the United States District Court for the Northern District of Mississippi against Marshal Turner, Brenda S. Cox, Pelicia Hall, Jeworski Mallet, Sean Smith, Timothy Morris, Lee Simon, Marylen

Sturviant, Mike Hatten, Jacqueline Banks, Rita Bonner, Lola Nelson, Chanel Red Connor, and John Doe. Doc. #1. Because Hatten, Banks, Bonner, and Nelson were named in the "Parties" section of the complaint but not listed in the caption,[1] the plaintiffs filed an amended complaint on July 7, 2022. Doc. #16. Asserting jurisdiction under 28 U.S.C. § 1331, the amended complaint alleges claims in four counts, all of which arise from the circumstances surrounding Holliman's death while he was an inmate at Parchman: (1) "Count I, Violation of Civil Rights Under 42 USC § 1983, Eighth Amendment – Failure to Protect;" (2) "Count II, Violation of Civil Rights Under 42 USC § 1983, Failure to Train & Supervise;" (3) "Count III, Violation of Civil Rights Under 42 U.S.C. § 1983, Eighth Amendment – Cruel and Unusual Punishment;" and (4) "Count IV, Wrongful Death under Mississippi State Law." *Id.* at 14–19. The plaintiffs seek "compensatory damages;" "punitive damages;" and "reasonable attorney's fees and costs;" and for the Estate only, under the Mississippi Wrongful Death Act, "fair and equitable damages, including, but not limited to, reasonable medical, hospital, funeral, and burial expenses …; reasonable compensation for Mr. Holliman's pain and suffering …; … damages for the loss of Mr. Holliman's financial support, society, and companionship; as well as any other damages cognizable under law;" and "[a]ny such other relief as appears just and proper." *Id.* at 19–20.

On July 28, 2022, Turner filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. #20. On August 31, 2022, Banks, Cox, Hall, Mallett, Nelson, and Smith filed a joint motion to dismiss also under Rules 12(b)(1) and 12(b)(6). Doc. #43. Both motions are fully briefed.[2] Docs. #21, #50, #54 (Turner's motion); Docs. #44, #52, #55 (Banks, Cox, Hall, Mallett, Nelson, and Smith's motion).

---

[1] *See* Doc. #1 at 1, 4.

[2] Regarding Turner's motion to dismiss, the plaintiffs initially filed their response and memorandum brief as one document in violation of Local Rule 7(b)(2), and without the signature of local counsel in violation of Local Rule 83.1(d)(3). *See* Doc. #45. On September 2, 2022, the plaintiffs again incorrectly filed their response and memorandum

**II**
**Standards**

Motions under Federal Rule of Civil Procedure 12(b)(1) challenge a court's subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) is characterized as either "facial" or "factual." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). "Where, as here, the movant mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotation marks omitted).

To survive dismissal under the Rule 12(b)(6) standard, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* In ruling on a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. U.S. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020).

---

brief, this time by using the login credentials of one attorney and the signature of another attorney, and by linking the memorandum to the response instead of to the original motion. *See* Docs. #46, #47. At the Clerk of Court's instruction, the plaintiffs finally properly filed their response documents.

3

### III
### Factual Allegations

At all relevant times, the Mississippi Department of Corrections ("MDOC") employed Marshal Turner as the Superintendent of Parchman Farms; Jacqueline Banks as a supervisor; Brenda S. Cox as Warden and Chief of Security at Parchman Farms; Jeworski Mallet as Deputy Commissioner of Institutions; Lola Nelson as Corrections Supervisor; and Sean Smith as Corrections Investigation Division Director, also known as the Criminal Investigations Director. Doc. #16 at 2–4. Pelicia Hall was MDOC Commissioner until she resigned on December 31, 2019. *Id.* at 3.

In mid-December 2020, Banks and Nelson "were personally contacted by [inmates'] family members who explained [the] risks of violence and … [the] conduct by guards at Parchman Farms. Nothing was done in response to these concerns." *Id.* at 10–11. Hall, Mallet, and Smith also "were warned by gang investigators of the high risk of gang violence in MDOC prisons, including gang-affiliated guards giving keys to prisoners to allow them to attack other prisoners." *Id.* at 5, 13.

On January 2, 2020, Roosevelt Holliman was in his cell in "Unit 29 in Area 1 of Parchman Farms," the "Mississippi State Penitentiary … in Parchman, Mississippi." *Id.* at 2, 6. Unit 29 is a segregated section for prisoners "with heightened security and greater restrictions than general population." *Id.* at 8.

In "the evening of January 1, 2020, or early morning of January 2, 2020," "Chanel Red Conner, also known as Redmond," a corrections officer at Parchman Farms, was on duty in Holliman's unit. *Id.* at 5–6. Redmond "was involved in gang related drug smuggling at Parchman Farms" and "wanted to 'get rid' of a prisoner as a result of his involvement with an opposing gang. This prisoner was not … Holliman." *Id.* at 6. Redmond left Holliman's unit "and went to a

4

neighboring unit where she released several inmates and provided them with large knives" that had been "chained to the kitchen tables" before she unlocked them. *Id.* at 6–7. Officer John Doe was the officer on duty in the neighboring unit when "Redmond instructed the prisoners to carry out the murder." *Id.* at 7. Doe "did nothing to stop … Redmond or the prisoners with whom she had provided … weapons." *Id.* Redmond and the armed prisoners returned to Holliman's unit, where she unlocked or provided the armed prisoners with keys to unlock Holliman's cell door. *Id.* Holliman was "stabbed to death by the prisoners [Redmond] released." *Id.*

Redmond contacted Michelle Lumzy, Holliman's sister and the administratrix of his estate, to "explain[] that the death of [Holliman] was a mistake and … to apologize to [Lumzy] for causing the death of her brother." *Id.* at 2, 7. The public explanation of Holliman's death is that he "was killed in a 'gang fight.'" *Id.* at 7. Redmond continues to work for MDOC at Parchman Farms "and was not terminated nor disciplined for her conduct." *Id.*

When Holliman was killed in the evening of January 1, 2020, or early morning of January 2, 2020, Parchman Farms was already "on lock down as a result of 'major disturbances,' i.e. several violent altercations and deaths within MDOC prisons." *Id.* at 8–9. On January 1, 2020, and January 3, 2020, respectively, other inmates in Unit 29 were "stabbed to death as a result of gang related violence." *Id.* at 8, 10.

## IV
## Analysis

Though two separately filed motions to dismiss are before the Court, the motions and the accompanying memoranda are virtually identical. In seeking dismissal under Rule 12(b)(1), the defendants argue that the Eleventh Amendment provides sovereign immunity. Doc. #21 at PageID 118; Doc. #44 at PageID 202. In seeking dismissal of the federal claims under Rule 12(b)(6), the defendants argue qualified immunity. Doc. #21 at PageID 121; Doc. #44 at PageID 205. And

5

regarding the state law wrongful death claim, the defendants argue such claims are statutorily barred under the Mississippi Tort Claims Act ("MTCA"). Doc. #21 at PageID 126; Doc. #44 at 210.

The plaintiffs respond that (1) the *Ex parte Young* exception to the Eleventh Amendment applies here, Doc. #50 at 9; Doc. #52 at 10; (2) the defendants violated Holliman's constitutional right to be protected from violence and therefore are not afforded qualified immunity, Doc. #50 at 12; Doc. #52 at 13; (3) the defendants have supervisory liability because their "failure to act amounts to deliberate indifference to [Holliman's] rights;" Doc. #50 at 15; Doc. #52 at 16; and (4) the state law wrongful death claim overcomes the statutory bar to claims of inmates because the wrongful acts here are intentional and criminal, Doc. #50 at 18–19; Doc. #52 at 19–21.

The defendants reply that the amended "complaint contains no specific allegations these Defendants were involved in the alleged incident or that [they] committed any specific, intentional criminal act in furtherance of the incident." Doc. #55 at PageID 327; Doc. #54 at PageID 318.

### A. State Sovereign Immunity

The defendants argue that the "Eleventh Amendment precludes claims against state officials acting in their official capacities" and "also immunizes states from state-law claims brought in federal court." Doc. #21 at PageID 118; Doc. #44 at PageID 202–03. The plaintiffs respond that this case falls under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. Doc. #50 at 9; Doc. #52 at 10.

While "42 U.S.C. § 1983 does not disturb Mississippi's state sovereign immunity"[3] under the Eleventh Amendment, only "[d]efendants in an official-capacity action may assert sovereign immunity" because "sovereign immunity does not erect a barrier against suits to impose individual

---

[3] *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020).

and personal liability." *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) (internal quotation marks omitted). Likewise, the *Ex parte Young* doctrine applies only to officers sued in their official capacities. *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

> [T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (cleaned up).

Here, the plaintiffs sued the defendants in their personal and supervisory capacities. Doc. #16 at 2–4. The amended complaint does not expressly allege any claims against the defendants in their official capacities. Even if the plaintiffs intended the supervisory capacity claims to be construed as official capacity claims, the claims still would be barred and dismissal still would be proper because "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State," or its officers sued in their official capacity, in federal court. *Graham*, 473 U.S. at 169.

### B. Qualified Immunity

The defendants argue that the plaintiffs made "no factual allegations to indicate that [they] should have known or inferred an excessive risk that correctional staff … have affiliations with prison gangs or that such staff … posed an excessive risk to Roosevelt Hamilton in particular." Doc. #21 at PageID 124; Doc. #44 at PageID 208. The plaintiffs respond that the defendants "had been warned of the risk of violence and gang affiliated guards and … did not act on [their] knowledge of the excessive risk of harm from uncontrolled violence when [they] knowingly permitted guards with gang affiliations to work in Parchman Farms." Doc. #50 at 15 (internal quotation marks omitted); Doc. #52 at 16 (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021). "When a government official is sued under Section 1983, the plaintiff must allege that the official was either personally involved in the deprivation or that his wrongful actions were causally connected to it." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (internal quotation marks omitted). "A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that casually result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alteration omitted).

Even when a § 1983 cause of action exists, the doctrine of qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Angulo v. Brown*, 978 F.3d 942, 948 (5th Cir. 2020). Once qualified immunity has been "raised as a defense by a defendant, … the plaintiffs have the burden of establishing the proof and arguments necessary to overcome it." *Strickland v. City of Crenshaw*, 114 F. Supp. 3d 400, 412 (N.D. Miss. 2015) (citing *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997)).

Assuming without deciding that the plaintiffs' allegations amount to a constitutional violation, the plaintiffs did not allege any personal involvement on the part of any of the defendants seeking dismissal. Further, the plaintiffs did not allege that any violation was the result of an unconstitutional policy implemented by such defendants. Accordingly, qualified immunity applies to require dismissal of the claims. *See Cass v. City of Abilene*, 814 F.3d 721, 728–29 (5th Cir.

2016) (defendant entitled to qualified immunity where plaintiff failed to establish personal involvement).

### C. State Law Claim

The defendants argue that the plaintiffs' wrongful death claim is prohibited by statute because Holliman was an inmate at the time the claim arose. Doc. #21 at PageID 126; Doc. #44 at PageID 210. The plaintiffs concede that the MTCA prohibits recovery by inmates based on "non-intentional/non-criminal acts" but argue the MTCA does not apply here because the "acts that led to Mr. Holliman's death were intentional violations of his constitutional rights." Doc. #50 at 19; Doc. #52 at 20–21.

> Under the Mississippi Tort Claims Act,
>
> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: … [o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution[.]

Miss. Code. Ann. § 11-46-9(1)(m). The "jail inmate provisions of the MTCA apply … as to any non-intentional/non-criminal acts alleged to have been committed upon [an] inmate." *Lee v. Thompson*, 859 So. 2d 981, 987 (Miss. 2003). However, allegations of intentional criminal acts against inmates can form the basis of a viable claim, "not under the MTCA, but under [Mississippi's] wrongful death statute." *Id.* While there is a "rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment," "an employee shall not be considered as acting within the course and scope of his employment … if the employee's conduct constituted … any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5 (2)–(3).

Under Count IV of the amended complaint, the plaintiffs allege that the "Defendants [sic] wrongful acts and omissions as discussed herein caused the death of Mr. Holliman." Doc. #16 at

9

19. Because the plaintiffs fail to allege that any moving defendant's "wrongful acts and omissions" meet the elements of any criminal offense, the defendants were acting within the course and scope of their employment, meaning the wrongful death claim is barred by the MTCA and properly dismissed.

## V
## Conclusion

The motions to dismiss [20][43] are **GRANTED**. The plaintiffs' claims against Turner, Banks, Cox, Hall, Mallett, Nelson, and Smith are **DISMISSED without prejudice**.

**SO ORDERED**, this 10th day of February, 2023.

                                        **/s/Debra M. Brown**
                                        **UNITED STATES DISTRICT JUDGE**